Dear Ms Truly:
On May 30, 1993, this office issued to you Opinion No. 93-406, regarding the Louisiana Public Facilities Authority Special Assessment Revenue Bonds (Unemployment Compensation Funding Program), Series 1987 (the "Series 1987 Bonds"), which bonds were issued pursuant to legislative authority under Act. No. 1 of the First Extraordinary Session of 1987, made statutory at R.S. 23:1532.1.
That opinion concludes that a legislative act which would reduce or eliminate the special assessment that secures the Series 1987 Bonds would be violative of the Federal and State Constitutions. The Opinion further concludes that R.S.23:1532.1, as well as the covenants in favor of bond holders as contained in the Series 1987 Bond Documents, prohibit the reduction or elimination of the special assessment which secures the bonds as long as the Series 1987 Bonds remain outstanding.
It has come to our attention that Mr. Daniel L. Juneau, President of the Louisiana Association of Business and Industry, has been successful in obtaining a legal opinion questioning the correctness of Opinion No. 93-406. Because of the importance of these issues to the State of Louisiana, which can ill-afford a default of any bonds, we feel it is imperative that we take every opportunity to clarify any misunderstandings or misrepresentations of Opinion No. 93-406.
It remains the opinion of this office that a reduction or elimination of the assessment securing the Series 1987 Bonds, while the bonds remain outstanding, would be both constitutionally and statutorily prohibited, and that such action would violate the covenants in favor of the holders of the Series 1987 Bonds, as contained in the Bond Indenture and the bond documents.
Please note that although the legal opinion obtained by Mr. Juneau (the "letter") questions the correctness of Opinion No. 93-406, it makes no legal argument, nor does it cite any legal authority, which questions our conclusion regarding the constitutional prohibitions against a reduction or elimination of the special assessment. Please be advised that our opinion in that regard is reaffirmed.
We disagree with the letter's argument that R.S. 23:1532.1
"expressly authorizes the [decrease] of the wage base on which the special assessment is collected." The letter quotes only portions of the pertinent provisions of R.S. 23:1532.1. The entirety of the pertinent provisions of R.S. 23:1532.1 state:
 "B.(1) (a) On or after July 1, 1987, and through and including those calendar quarters in which any outstanding bonds, notes, certificates reimbursement obligations, or other evidences of indebtedness referred to in R.S. 23:1532.1(C), sometimes referred to herein as the "bonds", are outstanding, employers shall be assessed by the administrator and shall pay a special assessment in addition to all other payments required pursuant to this Chapter, to the credit of a special account of the Employment Security Administration Fund to be created by the administrator equal to one and four-tenths percent of the first fifteen thousand dollars of wages paid by such employer or his predecessor to each employee, except for the period beginning July 1, 1987, and ending December 31, 1987, during which the special assessment shall equal one and four-tenths percent of the first seven thousand five hundred dollars of wages paid on and after July 1, 1987, by such employer to each employee.
 (b) Employers shall not be assessed a special assessment unless bonds as defined in this Subsection are issued and shall not be assessed (except for such period on and after July 1, 1987, to and including the date said bonds are issued) a special assessment at such time bonds are no deemed to be outstanding.
 Notwithstanding the foregoing, there shall be assessed a special assessment equal to one and four-tenths percent on such dollar amount of the first wages paid by such employer to each employee as will produce no less than an amount necessary to pay the maximum future annual debt service on any outstanding bonds, notes, certificates, reimbursement obligations owing to the issuer of a credit facility [including without limitation letters of credit, bond insurance, bond purchase agreements, lines of credit, and liquidity facilities (the "credit facility")], or other evidences of indebtedness, including but not limited to fees, expenses, and other costs of the credit facility issuer, trustees, and paying agents which can be proven to be directly caused by or related to the issuance of such bonds, notes, certificates, reimbursement obligations, or other evidences of indebtedness." (emphasis added)
R.S. 23:1532.1 B.(1)(a) clearly provides that the assessment "shall" be assessed and paid in an amount "equal to one and four-tenths percent of the first fifteen thousand dollars of wages paid by such employer . . . to each employee". R.S. 23:1532.1 B.(1)(b) just as clearly provides that the assessment "shall" be assessed on such dollar amount of wages "as will produce no less than an amount necessary to pay maximum future annual debt service".
B.(1)(a) clearly mandates and requires that an assessment equal to 1.4% of the first fifteen thousand of wages paid to each employee be collected. Furthermore, B.(1)(b) provides that if that amount is insufficient to cover annual debt service, then the dollar amount of wages upon which the assessment is based must be increased. Had the legislature intended the amount of wages upon which the assessment is based to fluctuate both up and down, the statute could easily have stated that the assessment be assessed in the amount necessary to produce `no more and no less' than would be necessary to meet annual debt service.
The letter also states that the bond documents authorize the special assessment to be collected "only in such amount as is necessary to pay bond debt service and related costs". To the contrary, and as recognized in Opinion No. 93-406, the bond documents clearly provide that the bond issue is secured by the assessment mandated in R.S. 23:1532.1. Among other provisions, the definition of "Pledged Revenues" provides that the Series 1987 Bonds are secured by the assessment mandated by R.S.23:1532.1, the revenues of which are the only security for the bonds. Clearly, the holders of the Series 1987 Bonds can be deemed to have relied upon that pledge, as well as the clear mandate of R.S. 23:1532.1. In our opinion the bond documents only authorize an increase, and not a decrease, of the dollar amount of wages upon which the assessment can be based.
We trust this clarification to be of assistance and we remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: MARTHA S. HESS Assistant Attorney General
RPI:MSH:JMZ:jav 0302n